UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NISHIA FLOYD-EVANS, Next
Friend of Jane Doe                                                                                       PLAINTIFF

V.                                                            CIVIL ACTION NO. 3:14cv214-DPJ-FKB

WILLIE MOOREHEAD, in his Individual
and Official Capacity, and JACKSON
PUBLIC SCHOOL DISTRICT                                                                  DEFENDANTS

ORDER

This § 1983 case relates to an alleged sexual encounter between a teacher and a student that occurred away from school and while school was not in session. It is before the Court on Defendant Jackson Public School District's ("JPSD") Motion for Summary Judgment [61]. As deplorable as the teacher's alleged conduct is, Plaintiff Nishia Floyd-Evans has not met her burden under Federal Rule of Civil Procedure 56(c) of showing a basis for holding JPSD liable. The motion is therefore granted.

I.      Facts and Procedural History

Floyd-Evans's daughter, M.J., was a seventh-grade student at JPSD Siwell Middle School in Jackson, Mississippi, in 2013. *See* Pl.'s Am. Compl. [8] ¶ 6; M.J. Dep. [66-1] at 11. At Siwell, M.J. volunteered as a "Cougar Helper," and in that capacity met Defendant Willie Moorehead while delivering mail to his classroom during the 2013-2014 school year. M.J. Dep. [66-1] at 11–12. Over time, M.J. began to like Moorehead in a "girlfriend boyfriend way." *Id.* at 20. Acting on this feeling, M.J. told Moorehead her phone number while at school in January 2014, and Moorehead wrote it down on a piece of paper. *Id.* at 33–35. Moorehead and M.J. then began talking on the phone and texting "every other day." *Id.* at 37. When at school,

Moorehead never said anything "sexual" to M.J. or "physically . . . put his hands on [her]." *Id.* at 12–14. Moorehead was never M.J.'s teacher. Def.'s Mot. [61] ¶ 3.

On the night of March 10, 2014, while Siwell Middle was out for Spring Break, Moorehead called M.J. on her cell phone and "said he wanted to take [her] somewhere." M.J. Dep. [66-1] at 16–18. M.J. "went along with it." *Id.* at 20. Moorehead picked M.J. up from her house and brought her to the Ross Barnett Reservoir where they had sexual intercourse. *Id.* at 17; Def.'s Mot. [61] at 1.[1] After Moorehead brought M.J. home, the Police informed M.J.'s parents that they had seen someone climbing through the window of their home. M.J. Dep. [66-1] at 30–31. M.J. then told her mother about her contact with Moorehead earlier in the night. *Id.* at 32–33. M.J. was 14 years old. *See* Pl.'s Am. Compl. [8] ¶¶ 6–7.

Plaintiff Floyd-Evans, acting as Next Friend of M.J., filed this lawsuit on March 14, 2014. Pl.'s Compl. [1]. Floyd-Evans asserted numerous claims under 42 U.S.C. § 1983 against JPSD and Moorehead, in his individual and official capacity. As to JPSD, she alleged (1) failure to train on matters related to sexual assault of a student, (2) failure to adequately investigate the background and employment of teachers, (3) failure to reasonably investigate sexual assault complaints, and (4) "[o]ther unconstitutional customs or policies, which encourage sexual harassment by teachers and students" led to M.J.'s abuse. Pl.'s Am. Compl. [8] ¶ 16. Floyd-Evans also brought an assault and battery claim against Moorehead in his individual capacity.

JPSD filed a Motion for Summary Judgment [61] arguing (1) Floyd-Evans created no genuine, factual dispute as to JPSD's liability under § 1983, (2) the claims against Moorehead in

---

[1]Under Rule 56, the Court views these facts in a light most favorable to the nonmovant and assumes Moorehead had sexual intercourse with M.J. as she testified in her deposition. *See* M.J. Dep. [66-1] at 27–28.

his official capacity are redundant of the claims against JPSD and should be dismissed, and (3) JPSD is not liable under the assault and battery claims, should the Court find they were charged with such in the Complaint.

Floyd-Evans twice sought and received extensions of time to respond.  *See* Pl.'s Mot. [63]; July 20, 2016 Text Order; Pl.'s Mot. [64]; Aug. 1, 2016 Text Order.  Plaintiff then filed a response [66], and in her supporting memorandum, "move[d] the Court to grant her a continuance to obtain responses to her discovery requests before ruling on [JPSD's Motion] and/or in the alternative to deny [JPSD's] Motion."  Pl.'s Mem. Opp. Summ. J. [67] at 1.  Floyd-Evans's supporting memorandum provided substantive responses to some, but not all of the legal theories addressed in her Complaint.  JPSD replied [69].  With respect to the theories that were not waived, the Court has personal and subject-matter-jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The nonmovant must also "articulate the precise manner in which the submitted or identified evidence supports his or her claim." *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

But it is important to note in this case that conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments do not constitute an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993) (per curiam). This is made particularly clear by the 2010 Amendments to Rule 56(c), which state that a party asserting that a fact is "genuinely disputed" must support the assertion by "citing to particular parts of materials in the record," and reiterate that the Court need consider only materials cited, though it may consider other materials in the record. Fed. R. Civ. P. 56(c)(1) & (3). And under Rule 56(e), "[i]f a party fails to properly support an assertion of fact . . . , the court may . . . consider the fact undisputed for purposes of the motion." Floyd-Evans's response includes many unsupported and conclusory allegations. It also contains factual assertions for which she does cite record evidence, but a review of that evidence does not

support the assertion. Accordingly, the Court has based its analysis on those factual assertions that have been properly supported.

III.   Analysis

    A.   "Motion" for Discovery

The Court will not allow further discovery for procedural and substantive reasons. Procedurally, Floyd-Evans's request is not properly before the Court because she has not filed a motion as required by Uniform Local Rule 7(b)(3)(C),[2] and has not filed an affidavit or declaration that complies with Federal Rule of Civil Procedure 56(d). Substantively, Plaintiff has not diligently pursued discovery. *See Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992) ("[T]he non-movant must diligently pursue relevant discovery—the trial court need not aid non-movants who have occasioned their own predicament through sloth.").

Regarding the latter, the original discovery deadline was April 21, 2015, and the original trial date was October 5, 2015. *See* CMO [17]. The discovery deadline was thereafter continued on April 22, 2015, November 23, 2015, and January 26, 2016. After the January extension, the Court noted that no further extensions would be given absent exceptional circumstances. *See* Jan. 26, 2016 Text Order. But on April 6, 2016, the parties jointly requested more time, which

---

[2]Though the Court respects Plaintiff's counsel and her abilities, it has on numerous occasions advised her to comply with this rule. *See Dorsey v. Gray*, No. 3:15cv566-DPJ-FKB, 2016 WL 4626636, at *3 (S.D. Miss. Sept. 6, 2016); *McLin v. Chiles*, No. 3:14cv636-DPJ-FKB, 2016 WL 208322, at *3 (S.D. Miss. Jan. 15, 2016); *El-Bawab v. Jackson State Univ.*, No. 3:11cv553-DPJ-FKB, 2013 WL 3884128, at *3 (S.D. Miss. July 26, 2013); *Slaughter v. Word of Faith Int'l Christian Ctr.*, No. 3:11cv364-DPJ-FKB, 2012 WL 5612373, at *3 (S.D. Miss. Nov. 15, 2012); *Kornegay v. Larabee*, No. 4:11CV112 DPJ-FKB, 2012 WL 13934, at *4 (S.D. Miss. Jan. 4, 2012).

the Court granted following a telephonic conference.  *See* Apr. 20, 2016 Order [42].  The Court noted in its Order, "This is the last one."  *Id.* at 1.  Yet Plaintiff now seeks one more extension, noting that she desires responses to her written discovery.

While that desire is certainly understandable, a review of the docket indicates that after the discovery period opened, Plaintiff waited 19 months before propounding written discovery on April 28, 2016—just over one year after the original discovery period expired.  And though JPSD  apparently never responded to Plaintiff's interrogatories or document requests—or at least never docketed a notice of response—Plaintiff never moved to compel under Federal Rule of Civil Procedure 37(a).  Under Local Rule 7(b)(2)(C), a party must file motions compelling discovery "sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court and time to effectuate the court's order before the discovery deadline."  Plaintiff could have filed such a motion in advance of the final June 20, 2016 discovery deadline, and the Court would have given it expedited review.  But as things now stand, the four-times-extended discovery deadline has passed, Defendant has moved for summary judgment, the issues have been fully briefed, and the previously extended pretrial-conference date is in less than two weeks.

In light of these circumstances, "Plaintiff cannot now rely on any purported discovery misconduct to compensate for a deficiency in Plaintiff's evidence."  *Lectec Corp. v. Chattem, Inc.*, No. 5:08-CV-130, 2011 WL 13085199, at *2 (E.D. Tex. Feb. 1, 2011) (noting failure to move to compel); *see also Tolan v. Cotton*, No. 4:09-CV-1324, 2015 WL 4874925, at *3–4 (S.D. Tex. Aug. 14, 2015) (denying Rule 56(d) relief where, among other things, counsel did not move to compel complete discovery responses); *Sullivan v. Worley Catastrophe Servs., LLC*, No. 11-

2597, 2013 WL 5530277, at *5 (E.D. La. Oct. 7, 2013) (denying Rule 56(d) motion where plaintiff claimed discovery responses were inadequate but never moved to compel); *Kermode v. Univ. of Miss. Med. Ctr.*, No. 3:09-CV-584-DPJ-FKB, 2011 WL 2619096, at *2 (S.D. Miss. July 1, 2011) ("The failure to bring these issues to the Court in a timely manner supports denial of the requested sanctions.").

The Court recognizes that Rule 56(d) motions are a necessary and appropriate tool that are often granted in the trial court's discretion. But given all of these circumstances, Floyd-Evans's request is denied.[3]

### B. Section 1983 Claim

Under 42 U.S.C. § 1983, an individual may enforce their federal constitutional rights against municipalities and local officials. To make any § 1983 claim, a plaintiff must allege the (1) deprivation of a federal right (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50.

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978); *see also Becerra v. Asher*, 105 F.3d 1042, 1045 (5th Cir. 1997). Rather, "to hold a municipality liable under § 1983, the plaintiff must prove three elements: (1) a policymaker; (2) an official policy; and (3) a 'violation of constitutional rights whose "moving force" is the policy or custom.'" *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 280 (5th Cir. 2015) (citing *Piotrowski v. City of Hous.*,

---

[3]Assuming the docket is correct, the Court is at a loss as to why JPSD would fail in its duty to respond. Regardless, this ruling should not be read as condoning such unprofessional conduct, assuming it occurred. This is an unusual case.

237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694)). "The policy maker is liable if an official policy itself is unconstitutional or the policy was adopted with deliberate indifference to its known or obvious consequences." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412–13 (5th Cir. 2015) (citations and internal quotation marks omitted). Finally, "the policymaker must have actual or constructive knowledge of the official policy or custom." *Id.* at 413. This Order examines the elements of municipal liability in turn.

      1.    Policymaker

Defining the policymaker is a critical first step because it defines whose actions are ultimately under review. According to JPSD, its board is the final policymaker; Plaintiff never directly addresses the question. "[T]he identity of the policymaker is a question of law, not of fact—specifically, a question of state law." *Groden v. City of Dall., Tex.*, 826 F.3d 280, 284 (5th Cir. 2016) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) ("We begin by reiterating that the identification of policymaking officials is a question of state law.")). When making this determination, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). In other words, he or she must have final authority over the disputed issue. *See id.*

Here, Floyd-Evans essentially challenges the manner in which JPSD addresses inappropriate teacher/student sexual contact, including the discipline it administers. The responsibility for these issues is rooted in Mississippi statutory law. Section 37-7-301 of the Mississippi Code prescribes the powers vested in school boards, stating in the relevant portion as follows:

> The school boards of all school districts shall have the following powers, authority and duties in addition to all others imposed or granted by law, to wit:
>
>> (l) To prescribe and enforce rules and regulations not inconsistent with law or with the regulations of the State Board of Education for their own government and for the government of the schools . . . .

Miss. Code Ann. § 37-7-301 (2016). District superintendents find their authority in section 37-9-14, which includes the following:

> (l) It shall be the duty of the superintendent of schools to administer the schools within his district and to implement the decisions of the school board.
>
> (2) . . . (m) To observe such instructions and regulations as the school board and other public officials may prescribe, and to make special reports to these officers whenever required.

*Id.* § 37-9-14.

So by statute, Mississippi gives school boards policymaking authority to "prescribe and enforce rules." *Id.* § 37-7-301(l). And that is exactly what JPSD did with respect to inappropriate teacher/student contact. The school district's "Staff Ethics" policies prohibit:

> 45) Any form of unwelcome or inappropriate physical contact with a student, except for the purposes of appropriate instruction, self-defense or necessary and appropriate physical restraint.
>
> . . .
>
> 47) Any form of sexual, lascivious or romantic contact with or solicitation of a student, including, but not limited to, kissing or hugging regardless of whether such activity is welcome or unwelcome.
>
> 48) Dating or attempting to date students, or engaging or attempting to engage, in any activity designed to encourage or which does encourage an inappropriate relationship with students.

JPSD Policy [66-15] at 7. Violation of this policy is grounds for termination. *Id.* at 1.

District Superintendent Dr. Cedrick Gray was granted statutory authority to administer these policies. Miss. Code Ann. § 37-9-14. He was not granted authority to make final policy regarding them. Moreover, it is the school board that has final authority over termination decisions that could result when a teacher violates these policies. *See id.* § 37-9-59; *see also Barrow v. Greenville Indep. Sch. Dist.*, 480 F.3d 377, 382 (5th Cir. 2007) (noting that decisions of final policymakers are not generally reviewable).

For these reasons, the school board, not Dr. Gray, is the final policymaker. *See Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 602–03 (5th Cir. 2001) (holding that school board was final policymaker under Mississippi law with respect to termination decision); *Sturgis v. Copiah Cty. Sch. Dist.*, No. 3:10-CV-455-DPJ-FKB, 2011 WL 4351355, at *4 (S.D. Miss. Sept. 15, 2011) (holding that "school board is the sole policymaker for school districts in Mississippi"); *see also Barrow*, 480 F.3d at 381 (finding superintendent was not a policymaker where Texas law "generally makes the board the policymaker and the superintendent the head administrator").

2. Official Policy

Because the board was the final policymaker, Floyd-Evans must premise its liability on an official policy rather than respondeat superior. *See Monell*, 436 U.S. at 691. "An official policy may take various forms, including a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Fennell*, 804 F.3d at 413 (internal quotation marks omitted). In the present case, JPSD's official policy is not facially deficient and prohibits Moorehead's conduct. *See* JPSD Policy [66-15] at 7. Floyd-Evans must therefore establish a "custom that fairly represents municipal policy" and that is

"adopted with deliberate indifference to its known or obvious consequences." *Fennell*, 804 F.3d at 413 (internal quotation marks omitted). Plaintiff has not met this burden.

JPSD contends that "there has been absolutely no evidence produced in discovery to support an allegation that the execution of a government's policy or custom resulted in injury to the Plaintiff in this case." Def.'s Mot. [61] ¶ 12. Floyd-Evans's primary response is that JPSD "tolerated a pattern of sexual misconduct between teachers and students that was so well-settled that it constituted a custom that fairly represented JPS policy." Pl.'s Mem. [67] at 14. And elsewhere in her memorandum, she contends that JPSD "moved offending teachers to other jobs in the district, transferred assaulted students to different schools, allowed offending teachers to resign in lieu of termination and did not report the offending teachers to the Mississippi Department of Education." *Id.* at 3. In other words, JPSD was too lenient on offending teachers, which led to a pattern of abuse.

Even a single incident of abuse is one too many from a societal standpoint. But the legal question is whether it was the official policy of JPSD to allow it. No reasonable juror could conclude that it was. To begin, Floyd-Evans identifies four JPSD employees that she claims engaged in sexual misconduct from 2005 through 2015. Pl.'s Mem. [67] at 6.[4] Even assuming her record evidence could be offered in an admissible form, the evidence merely shows that the employees were *accused* of misconduct. *See, e.g.*, Pl.'s Ex. K [66-10] (attaching civil complaint and answer wherein defendant denies alleged misconduct). Without more context, it is impossible to know whether these specific incidents establish a pattern of lenient

---

[4]Many of her allegations are supported with inadmissible hearsay like newspaper articles. *See Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (holding that newspaper articles constitute hearsay and are not proper summary judgment evidence).

treatment—much less a "widespread" pattern. *See Fennell*, 804 F.3d at 413. It may be perfectly reasonable to transfer a teacher after an investigation disproves an accusation of inappropriate conduct.

Floyd-Evans also relies on the deposition of former Human Resources Director Carol Dorsey to suggest a pattern of ignoring abuse or allowing resignation in lieu of termination. But again, the actual evidence does not support the characterizations. For example, Floyd-Evans states that Dorsey "testified JPS did not terminate teachers who sexually assaulted students and did not refer them to the MDE [Mississippi Department of Education]." Pl.'s Mem. [67] at 7 (citing Dorsey Dep. [66-2] at 23). But at most, Dorsey stated on the referenced page that she witnessed "instances where teachers have had *allegedly* inappropriate contact and been moved to other schools or other administrative jobs." Dorsey Dep. [66-2] at 23 (emphasis added).

In another example, Floyd-Evans contends that "Dorsey testified JPS did not report [band director] Carlton Williams . . . to MDE" after reports of inappropriate contact with a student. Pl.'s Mem. [67] at 7 (citing Dorsey Dep. [66-2] at 19). But Dorsey was asked whether she was aware that Williams "was alleged to have inappropriate contact with a student," and answered, "I heard of that allegation. I was not a part of any investigation on that." Dorsey Dep. [66-2] at 19. She then explained that the investigation was not conducted by HR "because he was a certified teacher." *Id.*; *see also id.* at 9, 18 (explaining that JPSD's attorney's office handled issues regarding certified teachers).

More generally, Dorsey testified that when a teacher was accused of sexual misconduct with a student, her department would prepare a letter informing "the accused" that "they were being placed on administrative leave until investigation was completed." *Id.* at 14. This

happened two to three times a year. *Id.* at 14–15. She further stated that it was "part of JPS's policy that if there is inappropriate conduct or misbehavior an investigation will be done, and if they were found to be guilty, employment would be terminated. But there were some instances where people resigned." *Id.* at 22. Asked how many, she stated that she was aware of "a couple of occasions that the individuals were allowed to resign." *Id.* at 19; *see also id.* at 25 (stating she was "aware of some").

Unsupported assertions aside, when the record evidence is viewed in a light most favorable to the non-movant, it appears that teachers *accused* of misconduct were suspended pending investigation and that "some" or "a couple" of teachers facing termination were allowed to resign. For this practice to constitute official JPSD policy, Floyd-Evans must show "[a]ctual or constructive knowledge of such custom . . . attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984). And as noted above, no such delegation exists in this context, so the question is whether the board itself possessed such knowledge.

> Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.

*Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

Here, Floyd-Evans concludes that JPSD "had plenty of information that put it on notice that teachers often engaged in inappropriate conduct with students." Pl.'s Mem. [67] at 15. But she offers no evidence that the decisions regarding other teachers were made at the board level,

and the record is too scant to suggest the board's constructive knowledge of a policy encouraging sexual abuse by allowing a couple of resignations over the ten-year period Dorsey addressed. Floyd-Evans has not created a genuine issue of material fact regarding the existence of an official JPSD policy.

### 3. Constitutional Violation

Even assuming the board adopted an official policy, Floyd-Evans must still show that she suffered a constitutional violation. The Fifth Circuit has "stated time and again that 'without an underlying constitutional violation, an essential element of municipal liability is missing.'" *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67 (5th Cir. 2012) (en banc) (citation omitted). In this case, JPSD rightly concedes that M.J.'s sexual abuse violated her right to bodily integrity under the Due Process Clause of the Fourteenth amendment. *See* Def.'s Mot. [61] ¶ 9; *see also Becerra*, 105 F.3d at 1045 ("[S]choolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth amendment[, and] physical sexual abuse by a school employee violates that right." (quoting *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994))).

But JPSD contends that Moorehead was not a state actor at the time of the assault and therefore committed no constitutional violation. While Floyd-Evans disputes that position, she alternatively argues that other JPSD officials violated M.J.'s rights when they acted with deliberate indifference to the risk of assault by JPSD teachers. Both theories could conceivably establish a predicate constitutional violation, *see Becerra*, 105 F.3d at 1048, so both will be addressed.

### a. Moorehead's Conduct

The general question is whether a teacher is a state actor when he or she has sexual contact with a student away from the school. The Fifth Circuit explored this issue in *Becerra*, holding that a "real nexus" must exist "between the activity out of which the violation occurs and the teacher's duties and obligations as a teacher." *Id.* at 1047 (citation omitted).

In *Becerra*, a teacher with a history of inappropriate conduct met a student in his music class. *Id.* at 1044. Though the child transferred to another school, the teacher maintained contact and ultimately molested the child in his parents' home. *Id.* The Fifth Circuit held that the teacher's sexual assault on the student did not occur under the color of state law. *Id.* at 1047. The court reasoned that "[w]hile there was evidence that [the teacher] had first befriended [the student] at school, there was no competent summary judgment evidence of physical sexual abuse at the school." *Id.* The teacher "was not [the student's] teacher 'before, during, and after' the sexual abuse, nor was this wrongful conduct 'on *and* off school grounds.'" *Id.* (emphasis added). And because the abuse "did not occur under color of state law, there was no state action and no violation of [the student's] constitutional rights." *Id.*

The evidence in this case is similarly lacking. The record is undisputed that Moorehead was never M.J.'s teacher. He neither said anything inappropriate to her nor had any inappropriate physical contact with her while at the school or during a school-sponsored event. While M.J. did tell Moorehead her number while at school, the "constitutional violation [of bodily integrity does] not extend to the development of trust and affection." *Id.*

In sum, Floyd-Evans has not presented evidence to show that Moorehead abused M.J. "while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West*, 487 U.S. at 50. So even assuming the other elements of municipal liability had been

shown, Moorehead's actions cannot form the predicate violation. *See Becerra*, 105 F.3d at 1048.[5]

### b. Supervisors' Conduct

Floyd-Evans does, however, offer an alternative argument. She contends that "[t]he state actors in this case are JPS school officials, Dr. Cedrick Gray, [JPSD attorney] Joan [sic] Shepherd, and others, who[ ] [were deliberately indifferent] to M.J.'s right to be free from sexual assault." Pl.'s Mem. [67] at 13. This argument flows from the *Becerra* court's supplemental opinion on denial of rehearing:

> [G]iven a real nexus, school supervisors who are deliberately indifferent to a student's constitutional liberty interest in her bodily integrity are themselves the state actors who perpetrated the constitutional tort, regardless of whether the individual who actually made illicit physical contact with the student was acting under color of state law.

105 F.3d at 1048, as supplemented on denial of reh'g (Apr. 7, 1997).

In this case, the only two individual state actors Floyd-Evans names are JPSD Attorney JoAnne Shepherd and District Superintendent Dr. Cedrick Gray. Other than mentioning her name, there is no record evidence cited with respect to Shepherd. As for Gray, Floyd-Evans recounts his testimony that he had approved the termination of teachers for sexual misconduct but could not recall any names. *See* Pl.'s Mem. [67] at 8. This testimony falls short of creating a jury question as to whether Gray was deliberately indifferent to students' constitutional liberty interests in their bodies. *Becerra*, 105 F.3d at 1048.

---

[5]Floyd-Evans offered a few other arguments that were not persuasive, such as noting—without cited evidentiary support—that M.J. only interacted with Moorehead at school in her role as a Cougar Helper, Floyd-Evans never left M.J. in Moorehead's care, and JPSD placed M.J. in Moorehead's company as a Cougar Helper without her mother's permission. Pl.'s Mem. [67] at 11–12.

16

4.   Causation

Assuming, *arguendo*, that Floyd-Evans submitted record evidence sufficient to show a constitutional violation and a custom of allowing resignations or transfers, she must still show that the official JPSD policy was the "moving force" for the constitutional deprivation. "The 'moving force' inquiry requires a plaintiff to make two showings: causation and culpability." *Mason*, 806 F.3d at 280 (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

Starting with causation, "[a] plaintiff must show a 'direct causal connection between the policy and the alleged constitutional deprivation.' The 'moving force' inquiry imposes a causation standard higher than 'but for' causation." *Id.* (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992)). Here, Floyd-Evans failed to cite evidence that JPSD's alleged custom was the moving force behind either Moorehead's violation or those of others allegedly acting with deliberate indifference. Dorsey confirmed that JPSD suspended teachers accused of misconduct pending investigation and that they faced potential termination. Dorsey Dep. [66-2] at 14–15, 22. Even assuming some teachers were allowed to resign their livelihoods when faced with allegations of misconduct, that would hardly encourage someone to abuse a child. And this point was not lost on Moorehead, who told M.J. not to tell her parents because he "could get in trouble." M.J. Dep. [66-1] at 26.

In reality, JPSD had an express policy against this conduct stating that it could lead to termination of employment. JPSD Policy [66-15] at 7. That some teachers may have taken that risk fails to show that the policy was the moving force behind a constitutional violation. *See Jackson v. Ford*, 544 F. App'x 268, 272 (5th Cir. 2013) ("Indeed, the officers violated [the]

17

County's written policies. . . . Therefore, the official policies of [the] County were not the moving force behind the alleged violation of [] constitutional rights.").

Finally, as to the culpability requirement, "if the policy is facially lawful, a plaintiff must also show that the municipality promulgated the policy with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Mason*, 806 F.3d at 280 (citation and internal quotation marks omitted). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407). Here, there is no dispute that teachers suspected of offending the district's policies against teacher/student sexual contact were suspended, investigated, and ultimately lost their jobs if found guilty. This is not a case where a municipality took no action. So assuming an official policy existed, the evidence is simply insufficient to show that JPSD acted with deliberate indifference to the risk of abuse. As cruel as Moorehead's actions were, they were his, and JPSD is not legally responsible under

§ 1983.

B. Assault and Battery

JPSD argues the assault and battery claims asserted in the Complaint are directed only at Moorehead in his individual capacity. Floyd-Evans makes no argument in response. Accordingly, the Court agrees that Floyd-Evans has not asserted a claim for assault and battery against JPSD.

C.   Official Capacity

JPSD moves the Court to dismiss the claims against Moorehead in his official capacity as redundant. Floyd-Evans makes no argument in response. Floyd-Evans's official-capacity claims are redundant of her claims against JPSD. *See Kennedy v. Graham*, 473 U.S. 159, 165–66 (1985); *see also Tuskan v. Jackson Cty., Miss.*, No. 1:13cv356-HSO-RHW, 2014 WL 3747606, at *1–2 (S.D. Miss. July 29, 2014). Therefore, Floyd-Evans's official-capacity claims against Moorehead should be dismissed with prejudice.

IV.   Conclusion

The Court has considered all of the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendant JPSD's Motion for Summary Judgment [61] is granted, and Floyd-Evans's official-capacity claims against Moorehead are dismissed with prejudice.

Finally, the Court notes that the only remaining Defendant, Willie Moorehead, was served with process on May 28, 2015, but that he never answered. Plaintiff is given 10 days from the date of this Order to seek entry of default. Failure to do so will result in the dismissal of all claims against Moorehead *without prejudice* and without further notice.

**SO ORDERED AND ADJUDGED** this the 26th day of September, 2016.

s/ *Daniel P. Jordan III*

UNITED STATES DISTRICT JUDGE